Johnson, J.
For the doctrine of law, applicable to the grounds of the present motion, it will only be necessary to refer to the opinion of the Constitutional court, when this case was formerly before it. (Harpers L. R. 314.)
One of the means provided by the act of the Legislature, (Pub. Laws 491,) to revoke a will regularly executed, and that alone on which- the counsel opposed to the motion rest the case, and the only one which in truth arises out of it, is that of obliterating it.
It never yet entered into the mind of any lawyer, that an accidental or unintentional obliteration amounted to a revocation. All agree that the act must have been done animo revocandi, to make it effectual.
Without entering into a minute enquiry as to what will or will not amount to the act of obliteration, it may be con- , ceeded and perhaps on good authority, that a very unimportant matter may suffice, when the intention is manifest, (Brailsford vs. Johnson, 2 Nott and M'Cord 272.) And for the purposes of this case, it may be admitted, that the underscoring and interlineations made by the witness, Mr. Barry, and the erasure of the words man in one place, and woman in another, as stated in the argument; did amount to the act of obliteration, within the meaning of the statute; and this is all that can be reasonably required; and the case is resolved into the single question of fact- quo animo were these things done.
The plaintiff affirms that they were done animo -revo-candi, and it is incumbent on him to prove it. Is-there any circumstance or expression from which it is possible to decide it? There is none! — On the contrary the witness Mr. Barry, *287 states that they were made, “ expressly for the witness’s own convenience, to enable him to draw another will. They were not intended to stand as alterations, or to deface it. The alterations proposed were calculated and intended to create a .fund,” as a provision for a daughter born after the execution of the. will: “ The testator never saw the will afterwards: he did not say he revoked it, or intended to revoke it, nor did he direct it to be cancelled or destroyed.” If we take these expressions litterally, they certainly furnish no proof of the fact sought-to be established by the plaintiffs. If they are taken in connexion with the state of testators affairs, which is certainly the more correct mode, the same result -follows:
The birth of a daughter, after the execution of the will, and additions to his fortune, had, it is admitted, determined the testator that some modifications in his will were necessary; and the erasures, interlineations, and under scoring of the will in tfuestion, were avowedly intended as a guide to Mr. Barry in the preparation of a new will; and furnish satisfactory ■proof that it was his intention to revoke the old. But this is not enough. Some one of the acts provided hr the statute must have been done with a view to give effect to the intention. (b) And it is evident that he looked to the execution of the new will as the means of effecting it, and it has been before shown that there was-no other act done with a view to effect that object.
It is objected, that, as a question of fact, the verdicts of two distinct juries, are conclusive against the motion; and 'that sending the case back would be unwarranted- interfere -anee on the part of the court -with -the right of trial by jury.
.The court feel sensibly the importance and delicacy of this objection; but whilsh we bow with profound respect to *288 the finding of a jury, in matters within their peculiar province, as the great bulwark of our Jives, reputation and property, we yet feel bound to maintain the supremacy of the law.
Harrison and Earle for the; motion.
Williams and Wallis Thomson, contra.
The court need not resort. to a metaphysical argument to prove that a verdict without evidence is contrary to law. The right to control a verdict under such circumstances has always been claimed and maintained in this and in every other country where the laws have been properly administered; and of this our own courts furnish many instances. (1 Bay 269. 2 Do. 23-131.).
This, as has been before noticed, is the second time that this case has been before the court, and the probability is, that all the facts that exist have been fully developed, and as the court are bound by the rules of law to maintain the ground taken, it is submitted whether the parties would not consult their own interest and the public convenience by putting an end to a course of litigation which must in the end prove unprofitable.
Motion granted.

 See the third clause of the act, (Pub, Laws 49Í,)- which corresponds with the sixth clause of the-English statute-of frauds Though the .provisions of our statute oí wills, generally, correspond with those of the statute of irauds, in relation to wills, yet the two legislatures have expressed themselves in different words, and the careful lawyer will always choose ■to refer to his own statute. Jl,